UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | | |
|---|---|---|
| Public Impact, LLC, | ) | Case No.: _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **VERIFIED COMPLAINT** |
| | ) | **(Jury trial demanded)** |
| Boston Consulting Group, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Public Impact, LLC ("Public Impact") brings these claims against Defendant Boston Consulting Group ("BCG") based on the following allegations:

## NATURE OF THE ACTION

1.      This action arises out of BCG's unlawful infringement of Public Impact's PUBLIC IMPACT® trademark, which Public Impact has used in commerce for nearly 20 years in connection with education-related research and consulting services. BCG has been well aware of Public Impact for years, as the two entities are direct competitors providing similar consulting services to similar clients in the education sector and tapping similar sources of funding for their research. BCG recently launched the "Centre for Public Impact" ("CPI") as a "global" vehicle for marketing its consulting work.  BCG is conducting a multi-media marketing effort featuring the "Centre for Public Impact," which is virtually identical to Public Impact's mark.  BCG has obtained trademark registrations for THE CENTRE FOR PUBLIC IMPACT: A BCG FOUNDATION in various countries worldwide, but, tellingly, has not sought to register the mark in the United States, where Public Impact holds an incontestable registration for PUBLIC

IMPACT®. BCG's infringement has escalated since the official launch of CPI. This lawsuit seeks to prevent further willful infringement by BCG.

## PARTIES

1.      Public Impact is a North Carolina limited liability company with its principal place of business in Carrboro, North Carolina.

2.      BCG is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

## JURISDICTION AND VENUE

3.      This Court has general personal jurisdiction over BCG because BCG is incorporated in Massachusetts.

4.      Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over Public Impact's claims arising under Sections 32 and 43 of the Lanham Act.

5.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental subject matter jurisdiction over Public Impact's state law claims because they are so related to the Lanham Act claims that they form part of the same case or controversy under Article III of the United States Constitution.

6.      Venue is proper in this district and division pursuant to 28 U.S.C. § 1391.

## FACTS

### Public Impact and Its PUBLIC IMPACT® Mark

7.      Public Impact is an education policy and management consulting firm that serves clients nationwide.

8.      Public Impact's co-founders and co-directors are Bryan C. Hassel and Emily Ayscue Hassel, both nationally known leaders in the field of education.

9.      Public Impact currently has 23 employees, including researchers, thought leaders,

2

policy experts, tool-builders, teachers, and on-the-ground consultants, all working to improve K–12 learning outcomes for children in the United States.

10.     Public Impact conducts research and provides consulting services to private foundations, government agencies, school districts, charter systems, nonprofits, and education policy leaders nationwide.

11.     Public Impact has published more than 200 reports on its work.

12.     Public Impact plays a highly visible role in education. For example:

   a.     Public Impact's Bryan Hassel served on the President's Commission on Excellence in Special Education. In response to Executive Order 13227, the Commission submitted a report to President George W. Bush entitled, *A New Era: Revitalizing Special Education for Children and their Families*.

   b.     Public Impact was chosen by the U.S. Department of Education to lead its efforts to assist states winning Race to the Top grants with their school turnaround efforts. This project entailed convening state leaders to discuss policy and management challenges and providing technical assistance in school turnarounds.

13.     Public Impact holds conferences on major issues in education and participates in conferences and public forums sponsored by others.

14.     Public Impact seeks and receives financial support for its work from large philanthropic foundations and government agencies at all levels.

15.     Public Impact owns a federally registered trademark, PUBLIC IMPACT, U.S. Reg. No. 2805013, registered with the United States Patent & Trademark Office on January 13,

2004, for use in connection with research and consulting services related to public policy and programs in the field of education. A true and accurate copy of the registration is attached as **Exhibit A**.

16.    This registration has been renewed as required and has obtained incontestable status pursuant to 15 U.S.C. § 1065.

17.    Public Impact has used the PUBLIC IMPACT® mark continuously in interstate commerce since at least June 1, 1996, and has common law rights in the mark based on that use.

18.    Public Impact promotes its PUBLIC IMPACT® mark by undertaking marketing and communication efforts including, without limitation:

   a.    Using     the     mark     on     its     websites,     PublicImpact.com, OpportunityCulture.org, and SchoolTurnarounds.org;

   b.    Using the mark on its Facebook page, facebook.com/publicimpact;

   c.    Using the mark on Twitter, twitter.com/publicimpact, with a username or "twitter handle" of @publicimpact; and

   d.    Using the mark in e-blasts sent to thousands of subscribers multiple times each year announcing specific reports and initiatives by Public Impact.

19.    Public Impact features the PUBLIC IMPACT® mark in each of the hundreds of reports it has published on education-related topics.

20.    Public Impact features the PUBLIC IMPACT® mark in conferences it sponsors, convenes, and participates in.

21.    Public Impact is well known in the field of education, not only by those who use its products and services, but also by those who provide financial support for its work.

22.    Public Impact has received unsolicited press coverage in both local and national

publications more than 35 times since 2011.

23.    Through nearly 20 years of extensive use in commerce and active marketing and promotion, the PUBLIC IMPACT® mark has come to be identified exclusively with Public Impact and its work in education policy and management consulting.

24.    As a result of Public Impact's continued investment in its research, consulting services, and thought leadership, Public Impact has developed invaluable goodwill in its PUBLIC IMPACT® mark.

### BCG and Its Use of "PUBLIC IMPACT"

25.    Upon information and belief, BCG is a private global management consulting firm with more than 80 offices in 46 countries.

26.    BCG describes its mission as partnering with clients from the private, public, and not-for-profit sectors to identify opportunities, address challenges, and transform their enterprises.

27.    BCG has an Education group that claims to "tackl[e] the key drivers of improvement in education," cover "all major educational topics" and work with "every type of educational organization."

28.    BCG claims that its clients include school districts, charter systems, and government agencies, among others.

29.    In 2013-2014, for example, BCG joined with the Harvard Business School and the Bill & Melinda Gates Foundation in a project that culminated in their publication of research reports on how business leaders can partner with education leaders "to transform PK-12 education in America."

30.    BCG has published on its website articles referencing and highlighting Public

Impact's work in the education field. Specifically:

     a.     In 2006, BCG published *Vision 2015*, an article designed to propose improvements to Delaware's school system. The article lists "Bryan Hassel, Public Impact" as an advisor to the Vision 2015 project.

     b.     In 2008, BCG published *The State of Public Education in New Orleans*, a report that cites a 2006 study by Public Impact, "Charter School Achievement: What We Know."

     c.     In 2012, BCG published *Achieving More for Less in U.S. Education with a Value-Based Approach,* a study that discusses Public Impact's work in testing how schools can extend the reach of effective teachers through digital technologies. In that study, BCG describes Public Impact as "a national education policy and consulting organization."

31.     Members of BCG's Education group receive Public Impact's e-blasts and follow Public Impact's work through these communications.

32.     Members of BCG's Education group have explored partnering with Public Impact on education-related work, including a Reach Extension Initiative, and have provided commentary on Public Impact's work.

### Public Impact's Discovery of BCG's Infringing Use of 'Public Impact'

33.     Public Impact subscribes to Google Alerts so that it can get notifications of Internet posts that reference "Public Impact." Through Google Alerts, Public Impact on April 29, 2015 learned of plans by BCG to launch the Centre for Public Impact, which would sponsor events, roundtables, and a website focused on analyzing the effectiveness of the delivery of public services.

34.     BCG states that CPI will publish findings intended to "help governments and their partners gain a greater understanding of what works and why."

35.     BCG claims CPI will "collaborate and work in partnership with governments, not-for-profits, the private sector and academics."

36.     BCG identifies CPI as "a BCG Foundation."

37.     CPI's website states that CPI is funded by BCG.

38.     BCG claims to own several trademark registrations and a pending application in jurisdictions around the world for THE CENTRE FOR PUBLIC IMPACT: A BCG FOUNDATION covering "organizing, arranging and conducting seminars, tutorials, lectures, exhibitions, and conferences including concerning issues in the fields of governance, bureaucratic administration, general welfare, and societal advancement." According to BCG, these jurisdictions include the United Kingdom (Reg. No. 3069013), Australia (Reg. No. 1641428), Switzerland (Reg. No. 665878), and Canada (App. No. 1729278).

39.     In the United States, however, BCG does not have a registration or an application for its mark.

40.     BCG promotes CPI on its two websites, BCG.com and BCGPerspectives.com.

41.     BCG owns an interactive website for CPI, CentreForPublicImpact.org. The website invites visitors to subscribe so that they can join in conversations and receive news about CPI's meetings and insights, as well as its launch.

42.     BCG claims to own all of the content on CentreForPublicImpact.org and claims protection under U.S. copyright and trademark laws for the content.

43.     BCG has launched a Twitter account for CPI, @4PublicImpact. BCG uses the hashtag "#publicimpact".

44.     BCG has established a LinkedIn account for CPI, linkedin.com/company/centre-for-public-impact.

45.     BCG uses CPI to further its work in education in the following ways, without limitation:

        a.     CPI has published education-related tweets;

        b.     CPI has published education-related articles on its own website.

46.     BCG employs a "thought leadership" strategy as a form of marketing.

47.     Through this strategy, consulting firms publish free reports, articles, and papers and participate in roundtables and forums to demonstrate the brainpower they can apply to problems.

48.     BCG uses CPI as a tool for executing its "thought leadership" marketing strategy.

49.     BCG's website contains references to CPI adjacent to links to further information for its education consulting services.

50.     Public Impact, through its counsel sent a cease and desist letter to BCG, demanding that it cease all infringing uses of "Public Impact."

51.     Although Public Impact attempted to negotiate with BCG over the following weeks, BCG would not agree to cease its infringing use of "Public Impact."

## FIRST CAUSE OF ACTION
### (Trademark Infringement – 28 U.S.C. § 1114)

52.     Public Impact realleges and incorporates by reference each of the above paragraphs.

53.     Public Impact is the owner of all right, title, and interest in and to the PUBLIC IMPACT® Mark.

54.     Public Impact holds a current, valid registration for the PUBLIC IMPACT® Mark

with the USPTO.

55.     The PUBLIC IMPACT® Mark is incontestable pursuant to 15 U.S.C. § 1065.

56.     BCG has used the Mark without Public Impact's authorization, permission, or consent.

57.     BCG's has used the Mark in commerce, in connection with the sale, offering for sale, distribution, advertising, marketing, and promotion of services.

58.     BCG's use of the Mark is likely to cause confusion, cause mistake, or deceive.

59.     BCG has willfully used and continued to use the Mark with actual knowledge of Public Impact's rights in the Mark.

60.     BCG has used the Mark with the knowledge that such use will cause confusion, cause mistake, or deceive.

61.     BCG's use of the Mark has caused Public Impact to suffer irreparable harm to the goodwill Public Impact has established in the PUBLIC IMPACT® Mark, for which Public Impact has no adequate remedy at law.

62.     BCG has refused Public Impact's demands that it cease its illegal conduct.

63.     BCG's infringement will continue unless enjoined by this Court.

### SECOND CAUSE OF ACTION
### (Unfair Competition and False Advertising – 15 U.S.C. § 1125)

64.     Public Impact realleges and incorporates by reference each of the above paragraphs.

65.     BCG's use of the Mark is likely to cause confusion, cause mistake, or deceive as to BCG's affiliation, connection, or association with Public Impact and as to Public Impact's sponsorship or approval of BCG's services.

66.     BCG has misrepresented and falsely advertised the origin, characteristics, and

qualities of CPI's services.

67.     BCG's acts of unfair competition and false advertising have caused Public Impact to suffer irreparable harm to the goodwill Public Impact has established in the Mark, for which Public Impact has no adequate remedy at law.

68.     BCG has refused Public Impact's demands that it cease its illegal conduct.

69.     BCG's unlawful acts will continue unless enjoined by this Court.

### THIRD CAUSE OF ACTION
**(Common Law Trademark Infringement and Unfair Competition)**

70.     Public Impact realleges and incorporates by reference each of the above paragraphs.

71.     Public Impact owns a valid trademark, PUBLIC IMPACT®.

72.     Public Impact is the senior user of the PUBLIC IMPACT® Mark for research and consulting services related to public policy and programs in the field of education.

73.     BCG used the Mark without Public Impact's consent.

74.     BCG's use of the Mark is likely to cause confusion.

75.     BCG's use of the Mark misappropriates and trades upon the reputation and goodwill Public Impact has established in the Mark.

76.     BCG's use of the Mark diverts from Public Impact to BCG the benefits arising from the reputation and goodwill Public Impact has established in the Mark.

77.     BCG's acts of infringement and misappropriation, unless enjoined by this Court, will continue to cause Public Impact to suffer irreparable harm, loss, and injury for which there is no adequate remedy at law.

78.     BCG's acts of infringement and unfair competition are malicious, willful, and wanton.

## FOURTH CAUSE OF ACTION
### (Unfair and Deceptive Trade Practices – N.C. Gen. Stat. § 75-1.1, *et seq.*)

79.   Public Impact realleges and incorporates by reference each of the above paragraphs.

80.   The following actions by BCG constitute unfair and deceptive acts and practices pursuant to N.C. Gen. Stat. § 75-1.1, *et seq.*:

   a.   Using the PUBLIC IMPACT® Mark with knowledge of Public Impact's ownership and exclusive right to use the Mark;

   b.   Using the PUBLIC IMPACT® Mark without Public Impact's authorization;

   c.   Using the PUBLIC IMPACT® Mark in a manner that creates a likelihood of confusion as to the source or origin of BCGs' services;

   d.   Using the PUBLIC IMPACT® Mark in a manner that creates a likelihood of confusion as to BCG's affiliation, connection, association with, or endorsement by Public Impact; and

   e.   Using the PUBLIC IMPACT® Mark to misrepresent that BCG's services are sponsored or approved by Public Impact.

81.   BCG's actions were in or affecting commerce.

82.   BCG's actions proximately caused Public Impact to suffer damages.

83.   Public Impact is entitled to treble damages pursuant to N.C. Gen. Stat. § 76-16.1.

84.   Public Impact is entitled to recover costs and attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

## FIFTH CAUSE OF ACTION
### (Unfair and Deceptive Trade Practices – Mass. Gen. Laws ch. 93A, § 11)

85.    Public Impact realleges and incorporates by reference each of the above paragraphs.

86.    The following actions by BCG constitute unfair and deceptive acts and practices pursuant to Mass. Gen. Laws ch. 93A, § 11:

      a.    Using the PUBLIC IMPACT® Mark with knowledge of Public Impact's ownership and exclusive right to use the Mark;

      b.    Using the PUBLIC IMPACT® Mark without Public Impact's authorization;

      c.    Using the PUBLIC IMPACT® Mark in a manner that creates a likelihood of confusion as to the source or origin of BCGs' services;

      d.    Using the PUBLIC IMPACT® Mark in a manner that creates a likelihood of confusion as to BCG's affiliation, connection, association with, or endorsement by Public Impact; and

      e.    Using the PUBLIC IMPACT® Mark to misrepresent that BCG's services are sponsored or approved by Public Impact.

87.    BCG's actions took place primarily and substantially within the Commonwealth of Massachusetts and were willful and in knowing violation of Mass. Gen. Laws ch. 93A § 11.

88.    BCG's conduct was a foreseeable cause of injury to Public Impact.

89.    BCG's actions were in or affecting commerce.

90.    BCG's actions proximately caused Public Impact to suffer damages.

91.    Public Impact is entitled to treble damages.

92.    Public Impact is entitled to recover costs and attorneys' fees.

## **VERIFICATION**

93.    The Declaration of Bryan C. Hassel, submitted in support and verification of this

Complaint, is included within the Complaint.

## JURY DEMAND

94.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Public Impact requests a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Public Impact prays for judgment against Defendant as follows:

A.     That the Court award injunctive relief, including a preliminary injunction and permanent injunction, to prohibit BCG, its agents, servants, employees, and all other persons acting in concert or participation with BCG, from:

  1.     Using any trademark, service mark, logo, trade name, domain name, or other designation confusingly similar to the PUBLIC IMPACT® Mark in connection with the advertising, marketing, promotion, offering for sale, sale, or distribution of education-related products and services;

  2.     Otherwise infringing the trademark rights of Pubic Impact; and

  3.     Otherwise competing unfairly with Public Impact.

B.     That all triable issues of fact be tried to a jury;

C.     That Public Impact be awarded judgment for damages against Defendant in an amount to be fixed by the Court, including:

  1.     All damages sustained by Public Impact as a result of Defendant's acts complained of in this action;

  2.     All profits received by Defendant as a result of the acts complained of in this action;

  3.     Treble damages;

  4.     Punitive damages;

5.     Reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and all other applicable

law;

6.     The costs of this action pursuant to 15 U.S.C. § 1117 and all other applicable law;

7.     Pre- and post-judgment interest to the fullest extent permitted by law; and

D.     That the Court award such other and further relief as it deems just and proper.

Respectfully submitted this 15th day of September, 2015.

CHOATE HALL & STEWART, LLP

/s/ *Joan A. Lukey*
Joan A. Lukey (BBO #307340)
Michael Bunis (BBO #566839)
Justin Wolosz (BBO #643543)
Two International Place
Boston, MA 02110
Telephone: (617) 248-4949
Joan.lukey@choate.com
Mbunis@choate.com
JWolosz@choate.com

Of Counsel

NEXSEN PRUET, LLC

Corby C. Anderson (N.C. Bar No. 20829)
Matthew S. DeAntonio (N.C. Bar No. 39625)
227 West Trade Street, Suite 1550
Charlotte, North Carolina 28202
Telephone: (704) 338-5331
canderson@nexsenpruet.com
mdeantonio@nexsenpruet.com

*Attorneys for Public Impact, LLC*

## VERIFICATION

The undersigned, being first duly sworn, deposes and says that he has read the foregoing **Verified Complaint**, that the statements of fact contained therein are true of his own knowledge; and as to those matters and things stated upon information and belief, he believes them to be true.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed September 15, 2015.

By: _____

Bryan Hassel
Co-Director of Public Impact, LLC